**A. G. McDOUGALD, Jr., Petitioner,**

v.

**LOCAL REVIEW COMMITTEE Composed of Paul L. Sutton, Bobby (H. L.) Jordan and E. L. White, Respondent.**

Civ. No. 717.

United States District Court
E. D. North Carolina,
Wilmington Division.
Feb. 12, 1957.

Carter & Murchison, Wilmington, N. C., for petitioner.

Julian T. Gaskill, U. S. Atty., for respondent.

GILLIAM, District Judge.

The petitioner, A. G. McDougald, Jr., is a farmer in Bladen County, North Carolina. The local committee, to which the Secretary of Agriculture delegated the authority for setting acreage allotments for farms in Bladen County, determined that McDougald's cotton allotment for 1956 should be 8.6 acres and that his tobacco allotment should be 9.4 acres.

Pursuant to Title 7 U.S.C.A. § 1363, McDougald had these determinations reviewed by the Local Review Committee, the respondent before me.

In regard to tobacco, McDougald, by his attorneys, made the following claims before the review committee: "1. That the acreage allotment and Marketing Quota of 9.3 acres of tobacco for 1956 crop was based on incorrect records and incorrect measurements for prior years. 2. That the allotment and quota should be at least 15.0 acres based on the size and history of this farm and on its comparison with similar farms."

The review committee made the following findings, conclusions, and determinations:

"Findings of Fact

"It was found that the quota of 9.34 acres was determined by applying the factor 88.11% to the 1955 allotment of 10.6 acres. (88.11 x 10.6 – 9.339). This was the formula applied to all tobacco allotment in Bladen County to determine the acreage to be allotted to each farm. This farm was considered by the county and community committeemen along with all other farms in making adjustments from the county acreage reserve.

"Conclusions

"The Committee ruled that the 1956 allotment of 9.34 acres of tobacco was proper and that there was no error found in the determination of this allotment.

"Determination

"The 1956 Flue-cured tobacco acreage allotment for this farm should be 9.34."

In regard to cotton, McDougald's claims were: "(1) That the acreage allotment and marketing quota of 8.6 acres was based upon incorrect records for prior years, said records being based upon estimates without actual measurements. (2) That the allotment and quota should be at least 15 acres when based upon the history of the farm and actual acreage planted. (3) That the acreage allotment and quota reduction from 13.2 acres to 8.6 acres was improper and based upon incorrect records, no general reduction having been made. (4) That the Allotment and quota for 1956 should be at least 15 acres based on the size and history of this farm and on its comparison with other similar farms."

The review committee made the following findings, conclusions, and determination:

"Findings of Fact

"It was found that the County Committee determined the 1956 Cotton Allotment of 8.6 acres by applying the factor .6879 to the average of the 1953, 1954 and 1955 cotton acreage. This formula was used on all cotton farms in Bladen County. The County Committee has re-. viewed on affidavit from Don Hamilton that 5½ acres of cotton had been plowed under in 1955 because of a bad stand and the field planted to corn and beans. This information was used in the 1955 history to arrive at the allotment figure of 8.6 acres. This farm was considered by the County Committee in making adjustment from the county reserve.

"Conclusions

"The Committee ruled that the 1956 allotment of 8.6 acres of cotton was proper. It having been determined according to the formula used on other cotton allotment in Bladen County.

"Determination

"The 1956 Cotton Allotment for this farm should be 8.6 acres."

As provided by Title 7 U.S.C.A. § 1365, McDougald instituted proceedings for review by this court of the Review Committee's decisions. Section 1366 limits review in this court to questions of law, and provides that " * * * findings of fact by the review committee, if supported by evidence shall be conclusive."

■ The essence of McDougald's objections to the Review Committee's action is that he was not permitted at the committee hearing to introduce evidence on and argue the incorrectness of his allotments in prior years. This position is completely untenable. The acreage allotments in past years are not open to collateral attack. If allotments were wrong in other years, they were subject to review and correction in those years. The statutory remedies were available. McDougald failed to utilize them at the proper time. It is now too late to seek redress before the review committee or before this court. The county committee

applied to old quotas the percentages determined by the Secretary of Agriculture to set this year's quotas. Having farmed without complaint under the old quotas, McDougald now complains when those quotas are used in a formula which sets his 1956 quotas at figures lower than he would like to have.

The jurisdiction of the review committee is special and limited. The jurisdiction of this court is also. Neither extends to the point desired by McDougald for opening questions that would have been properly before us years ago if there had been any merit in them then. Having once accepted them, he must now accept the consequences when these old quotas are utilized as a reference point for this year's acreage allotments.

■ The third point on which McDougald seeks review in this court is based on the following claim made before the review committee. "Refusal of the County Committee to assign to and permit owner to use on this farm his one-seventh (⅐) part of the allotment and quotas of tobacco, peanuts and cotton on Farm No. 1943 in Brown Marsh Township, Bladen County, known as the Paul McKeithan Estate lands, listed in the name of Herbert Blanks and his successors and listed as being in White's Creek Township, said county in which farm this applicant owns a one-seventh (⅐) undivided interest."

The review committee disposed of this claim as follows:

"Findings of Fact

"It was found that the applicant did not have possession of any specific area of this farm and there was no way to determine what part of the cropland would be assigned to the applicant in the case a division of this farm could be made.

"Conclusions

"The Committee ruled that until a division of the property is made and the applicant given legal title to a specific part of the farm no allotment of quota crops can be assigned to him."

I agree with the review committee's decision; and, by negative implication, Judge Williams' decision in Eaddy v. Lawrimore, D.C., 143 F.Supp. 901, 902, supports this conclusion. In that case it was held that a son's ownership of a one-eighth (⅛) remainder interest in his mother's farm would not disqualify him when he applied for a "new grower" allotment for his own farm, one qualification of a "new grower" being: " 'The farm covered by the application shall be the only farm owned or operated by the owner * * * ' ". 18 F.R. 3997. Similarly, ownership of a one-seventh (⅐) undivided interest in a farm, though such interest be a present one, enjoyment of which is not contingent upon outliving a life tenant, would not so personalize any portion of the crop quotas on that farm as to enable the part owner of the farm to transfer a fraction of the allotment to another farm owned by him.

The action of the review committee is affirmed on all questions raised by the petitioner, and the action is dismissed with costs to respondent.